963 F.2d 382
 140 L.R.R.M. (BNA) 2536
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LA FAVORITA, INC., Respondent.
 No. 91-9543.
 United States Court of Appeals, Tenth Circuit.
 May 26, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This matter is before the court on the application of the National Labor Relations Board (NLRB) for enforcement of an order finding La Favorita, Inc. in violation of sections 8(a)(1) and (3) of the National Labor Relations Act (NLRA). La Favorita filed a cross petition seeking to set aside the NLRB's order. After carefully reviewing the record, we grant enforcement. See 29 U.S.C. § 160(e).
 
 
 3
 Gilbert and Sylvia Gamez own and operate the La Favorita tortilla bakery and restaurant, which are separate facilities located a few miles apart in Brighton, Colorado. La Favorita employs approximately forty people in the two facilities. In August 1989, union representative Wilbert Martinez commenced efforts to organize the La Favorita employees. The violations which are the subject of the NLRB's order arose out of the organization effort and the subsequent union election held at the tortilla plant.
 
 
 4
 The Board's order adopted in whole the rulings, findings, and recommendation of the administrative law judge. The ALJ ruled La Favorita violated section 8(a)(1) of the NLRA by 1) offering employees money to assault the union organizer, 2) threatening to terminate employees if they spoke to the union organizer, 3) threatening employees by telling them other employees were fired for talking to a union organizer, 4) offering raises as inducement to vote no in the union election, and 5) interrogating employees about their voting preferences so those opposed to the union could be encouraged to vote. In addition, the ALJ found La Favorita violated section 8(a)(3) when it refused to rehire an employee because of his union activities.
 
 
 5
 "On review of an NLRB order, a court should grant enforcement if the Board correctly interpreted and applied the law and if its findings are supported by substantial evidence in the record, considered in its entirety." Presbyterian/St. Luke's Medical Ctr. v. NLRB, 723 F.2d 1468, 1471 (10th Cir.1983). Here, the Board adopted the findings and recommendations of the ALJ. Consequently, we must review the record to determine whether substantial evidence supports the ALJ's ultimate conclusions. In this endeavor we may not reweigh the evidence, absent extraordinary circumstances, as credibility determinations such as those necessary to decide this case are particularly within the province of the ALJ. McLane/Western, Inc. v. NLRB, 723 F.2d 1454, 1458 (10th Cir.1983). With these principles in mind, we review the Board's order.
 
 A. Violations Under Section 8(a)(1)
 
 6
 The ALJ found five violations under section 8(a)(1) of the Act. This section, which is codified at 29 U.S.C. § 158, makes it unlawful "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in the NLRA. 29 U.S.C. § 158(a)(1). In light of the fact-intensive nature of the findings at issue, we address each stated violation separately.
 
 
 7
 1. Offer of money to assault union organizer
 
 
 8
 Valentin Garcia, a former employee at La Favorita, testified that Gilbert Gamez approached him on August 19, 1989, and offered him twenty dollars to spray Wilbert Martinez with a high pressure water hose. Garcia testified that when he declined, Gamez approached current employee Patricio Reyna and made the same offer. Garcia testified that although water was sprayed towards Martinez, he did not get wet. Gamez denied the incident ever took place. Reyna recalled an incident where Martinez was almost sprayed with water, but indicated it was unintentional and that Gamez never offered him money.
 
 
 9
 The ALJ credited the testimony of Mr. Garcia over that of Messrs. Gamez and Reyna. The ALJ stated, "Mr. Gamez ... left me with the strong impression that he was simply denying those events and statements attributed to him which he felt were inconvenient or embarrassing. I do not believe he felt constrained by the truth to fully describe events as he recalled them." R.Vol. III Doc. 1 at 7.[1] We have carefully reviewed the record and conclude there is substantial evidence to support the ALJ's conclusion that Gamez was attempting to interfere with the union organization effort.
 
 
 10
 2. Threats regarding termination for talking to union organizer
 
 
 11
 Four different employees testified regarding threats Gilbert Gamez allegedly made to coerce votes at the union election. Valentin Garcia testified that he came to work the morning after giving his name to Martinez and found his time card missing. He testified that a second employee also had his card removed. He stated Gamez, who had the time cards, questioned him regarding his involvement with Martinez. Garcia and the second employee were allegedly told Gamez had already fired one employee for giving his name to the organizer and that if they continued he would fire them as well.
 
 
 12
 Jesus Raul Rodriguez, another former employee, also testified about threats Mr. Gamez made. He recalled a conversation with Gamez at the end of the day when both were located outside the plant near Martinez. Rodriguez testified that he asked Gamez about a certain employee who he had not seen recently. Gamez replied that the employee was fired because he was seen talking to the union organizer. Gamez denied having the conversation.
 
 
 13
 Two other employees, Rigoberto Briones and Alicia Basquez, also testified to conversations they had with Gilbert Gamez regarding the union organizer. Briones stated Gamez told him that any employees seen talking to Martinez would be fired. Likewise, Basquez testified that Gamez told her he had let employees go for speaking to the union organizer. Gamez denied both conversations.
 
 
 14
 The ALJ credited these employees' testimony over the denials from Mr. Gamez. The record amply supports the ALJ's findings with respect to these violations. In its appellate brief, however, La Favorita argues vigorously that the testimony of these witnesses was patently incredible. In particular, the company argues that the incident involving the time cards could not have taken place because the employees' time cards show that they did not punch in at the same time on the date in question, or for that matter, on any date that week. There is a fifteen minute difference between the punch-in times of the two employees on the date in question.
 
 
 15
 The difference in time noted on the cards does not make the testimony patently incredible. Garcia did not testify that the two men punched in at exactly the same time, only that they came in to get the cards and start work at the same time. Moreover, the ALJ's findings, including his determination that the witnesses' credibility would not be absolutely dependent on their description of the timing of these events, was well within his discretion. "[W]hen, as here, the issues presented are largely ones of credibility, we will not lightly overturn the decision of the ALJ who had the opportunity to hear the testimony and view the witnesses." NLRB v. First Nat'l Bank of Pueblo, 623 F.2d 686, 691 (10th Cir.1980). La Favorita's contentions are really an attempt to reargue the facts. This they cannot do.
 
 
 16
 3. Offering employees raises to vote no in the election
 
 
 17
 Margarito Gonzales testified that prior to the election, Gilbert Gamez mentioned that he was considering giving Gonzales and his two cousins, Valentin and Petronilo Garcia, raises. Gamez allegedly told Gonzales they would get the raise if they voted against the union. Gonzales stated Gamez told him to convey this message to his cousins. Gamez denied the conversation ever took place.
 
 
 18
 Valentin Garcia testified that the day before the election he and his brother were leaving the plant when Mr. Gamez approached them. Gamez made certain derogatory remarks about the union then directed Garcia to Margarito Gonzales, who Gamez said "knew everything." Again, Gamez denied this conversation took place. Both Gonzales and Garcia testified that the offer was conveyed to Garcia. Garcia testified that he told Gonzales he would not accept the raise because his past requests for a wage increase were denied. Gonzalez' testimony confirmed these statements, although he stated Garcia told him he was "inside" the union and, therefore, would not accept the offer. It is undisputed that Margarito Gonzales received a raise on November 16, 1989.
 
 
 19
 Again, the record contains substantial evidence to support the ALJ's determination that Gamez' conduct constituted an attempt to interfere with the election process. Gamez' only response to this testimony, which was corroborated by two witnesses, was complete denial that any of the events occurred. Because the record completely supports the ALJ's findings, we agree that enforcement is appropriate.
 
 
 20
 4. Interrogation of employees on election day
 
 
 21
 Margarita Medina testified that on the day of the election she received a call from an employee of La Favorita while she was at a friend's house. Sylvia Gamez then got on the phone and asked her why she had not voted. Medina responded that she was busy. Gamez inquired what her vote would be. When she responded "no," Gamez offered to send a cab for her so she could vote. Medina testified she did get to the plant to vote, but did not take a cab. Sylvia Gamez denied the events ever took place.
 
 
 22
 Once again, the ALJ made a credibility determination based on his assessment of the witnesses and their demeanor. Our review of the record reveals there is substantial evidence in the record to support his determination.
 
 B. Violation of section 8(a)(3)
 
 23
 The ALJ also concluded La Favorita violated section 8(a)(3) of the Act, codified at 29 U.S.C. § 158(a)(3). This provision makes it an unfair labor practice to discriminate "in regard to hire or tenure of employment." Id. The ALJ found La Favorita violated this provision when it refused to rehire Valentin Garcia because of his union sentiments and activities.
 
 
 24
 On November 12, 1989, Garcia submitted a written request for a leave of absence to commence November 15. Garcia made the request because his wife was having a difficult pregnancy and was going to deliver early. He requested leave without pay until the baby was born. Garcia testified that after submitting the request he had a conversation with Gilbert Gamez in which Gamez indicated Garcia's job would be available when he returned.
 
 
 25
 At the end of the workday on November 15, Garcia received the following letter, written in both English and Spanish:
 
 
 26
 Your request for a leave of absence, without pay, beginning November 16, 1989 is granted. The leave of absence is for 5 days. If you do not return to work on or before November 21, 1989 you will have to reapply for employment with La Favorita, Inc. If it is necessary for you to reapply for employment with La Favorita, Inc., you will be given priority consideration if and when there is and [sic] opening.
 
 
 27
 R.Vol. III Doc. 1 at 6. Mrs. Garcia gave birth on November 26. Due to complications, she was forced to remain at home, in bed, until January 6.
 
 
 28
 Garcia returned to La Favorita on December 15. Gamez told him there was no work but that he should fill out a new application, which he did. On January 21, Garcia returned to the plant. Gamez stated he had already hired new employees and that Garcia was too late. On January 25, Garcia spoke with Gilbert Gamez' father, who told him he had no chance of obtaining employment at the plant.
 
 
 29
 La Favorita records indicate that several new employees were hired in December. Gilbert Gamez testified he called Garcia on December 18 to offer him a job. He stated he called several times and let the phone ring for five minutes each time, but that no one answered. In contrast, Mrs. Garcia testified Gamez never called. She was sure of this because she did not leave the house in December and had the phone on a nightstand next to her bed.
 
 
 30
 The court credited the Garcias' testimony on this issue and discredited that of Mr. Gamez. The ALJ noted there was testimony from Margarito Gonzales indicating Gamez was told Garcia was "inside" the union. Thus, the credited testimony supported an inference that Gamez was fully aware of Garcia's sentiments with respect to the attempt to organize La Favorita. We reject La Favorita's argument that the ALJ's ruling requires it to rehire any employee who takes a leave of absence extending longer than what the company has allowed. The ALJ's decision merely prohibits La Favorita from making hiring decisions solely on the basis that the applicant in question has shown pro-union sentiment. We hold there is substantial evidence in the record to support the ALJ's ruling that Gamez failed to rehire Garcia because of his union activities and sentiment.
 
 
 31
 Consequently, La Favorita's petition for review of the order by the National Labor Relations Board is DENIED. The National Labor Relations Board's request for enforcement is GRANTED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We note at the outset that this credibility determination permeates the ALJ's decision. The ALJ specifically noted the factual conflicts inherent in the case and stated, "I found Mr. Gamez' demeanor to be unpersuasive particularly when arrayed against the various witnesses involved herein." R.Vol. III Doc. 1 at 6